**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CRAIG H., by his next friend, CRISTINA CORP-FRANCIS, | : : : | |
| Plaintiff, | : : | C.A. No. 04-CV-1985 |
| v. | : : | |
| CITY OF PHILADELPHIA | : : | |
| Defendant. | : : | |

**MOTION FOR PRELIMINARY INJUNCTION**

Plaintiff Craig H., by his next friend, Cristina Corp-Francis, hereby moves pursuant to Rule 65 (a), Fed. R. Civ. Proc. for a preliminary injunction against the City of Philadelphia ("the City"). As is more fully set forth in the accompanying memorandum of law, plaintiff will be irreparably harmed absent injunctive relief, and plaintiff has a high likelihood of success on the merits of the case.

The injunctive relief sought by plaintiff would require the City to provide plaintiff with

services needed to accommodate his deafness, and end his virtual isolation at a residential placement provided by the City.

        Respectfully submitted,



        _____
        Edmond A. Tiryak, Esquire
        Attorney at Law
        Attorney I.D. No. 20501
        Post Office Box 229
        Wayne, PA 19087-0229
        (610) 341-9797 (voice)
        (610) 341-9356 (fax)
        etiryak@email.msn.com

        Rachel Mann, Esquire
        Attorney I.D. No. 49267
        Disabilities Law Project
        1315 Walnut Street, 4th Floor
        Philadelphia, PA 19107
        (215) 238-8070, Ext. 205

        Attorneys for Plaintiff

Date:  June 11, 2004

**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CRAIG H., by his next friend, CRISTINA CORP-FRANCIS, | : : : | |
| Plaintiff, | : : | C.A. No. 04-cv-1985 |
| v. | : : | |
| CITY OF PHILADELPHIA | : : | |
| Defendant. | : : | |

## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION FOR PRELIMINARY INJUNCTION

**I.     BACKGROUND.**

Plaintiff Craig H. is a deaf man who, due to mental illness, is qualified for and is receiving residential mental health services from the Defendant City.  Contrary to law, however, the City is not providing Plaintiff with effective communication with anyone in his residential program, leaving him isolated, frustrated and at risk.  No staff or residents at the facility understand sign language, which is Plaintiff's primary means of communication, and the City has not been providing interpreters at the home.  Staff are not in a position to know when Plaintiff is becoming delusional, or having a negative reaction to his psychotropic medications, nor are they in a position to help him through any difficulties at all.  Moreover, plaintiff cannot participate in activities with his peers, since he cannot communicate with them.

The City has known for more than a year that a placement exists at an appropriate mental health residence designed for people who are deaf, where sign language is the primary language used.  This placement, in neighboring Montgomery County, has had an available opening for Plaintiff since at least October of 2003, yet defendant has done nothing to either move Plaintiff

to this program or to otherwise meet his need for effective communication in his residence. As a result, Plaintiff's mental status is continually compromised, he has been shut out of communications with his staff and peers, no doubt exacerbating his mental illness. The emotional and psychological harm that Plaintiff is experiencing every day is irreparable.

The City's actions and inactions discriminate against Plaintiff on the basis of his deafness, in violation of the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act ("Section 504"). Unless the Court enters a preliminary injunction against the City, Plaintiff will continue to suffer irreparable harm. Such an injunction would cause no comparable harm to the City, and would be in the public interest.

## II.     STANDARD FOR PRELIMINARY INJUNCTION

In considering a motion for preliminary injunctive relief, a court must consider "(1) whether the movant has a reasonable probability of success on the merits; (2) whether irreparable harm would result if the relief sought is not granted; (3) whether the relief would result in greater harm to the non-moving party; and (4) whether the relief is in the public interest." *Swartzwelder v. McNeilly*, 297 F.3 228, 234 (3d Cir. 2002).

## III.    CRIAG H. HAS A REASONABLE PROBABILITY OF SUCCESS ON THE MERITS OF HIS CLAIMS

A.  The Americans with Disabilities Act.

Title II of the ADA prohibits public entities from subjecting qualified individuals with disabilities to discrimination "by reason of such disability". 42 U.S.C. § 12132. That the City is a public entity (which includes any "local government"[1]) goes without saying. That Plaintiff is an individual with a disability is also undeniable. Under the ADA, disability is defined as "a physical or mental impairment that substantially limits one or more of the major life activities of

---

[1] See 42 U.S.C. § 12131(1)(A)

such individual." 42 U.S.C. § 12102(2). The regulations implementing Title II explain that the term "physical or mental impairment" includes "speech and hearing impairments" and that "major life activities" include hearing and speaking. 28 C.F.R. § 35.104. Due to his deafness, Plaintiff cannot speak or hear at all.

An individual with a disability is "qualified" if, "with or without reasonable modifications to rules, policies or practices, the removal of… communication … barriers, or the provision of auxiliary aids or services" the individual "meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2). ("Auxiliary aids and services" includes "qualified interpreters or other effective methods of making aurally delivered materials available to individuals with hearing impairments." 42 U.S.C. § 12102(1)(A)) The City has determined that Plaintiff meets the essential eligibility requirements for its residential mental health services in that it has long ago concluded that residential placement is appropriate for plaintiff and the City has been funding his placement in a residential mental health facility. Thus Plaintiff is a "qualified individual with a disability" – he is qualified for mental health services and he is deaf.

Finally, the City is discriminating against Plaintiff by reason of his disability, i.e., his deafness. The regulations implementing Title II, at 28 C.F.R. § 35.130 (b)(1), explain discrimination as follows:

> A public entity, in providing any aid, benefit or service, may not, directly or through contractual, licensing or other arrangements, on the basis of disability
>
> (i) Deny a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit or service;
>
> (ii) Afford a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit or service that is not equal to that afforded others;

      (iii)    Provide a qualified individual with a disability with an aid, benefit or service that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others;

The regulations further provide, at 28 C.F.R. § 5.160 that:

(a) A public entity shall take appropriate steps to ensure that communications with applicants, participants, and members of the public with disabilities are as effective as communications with others.

(b) (1) A public entity shall furnish appropriate auxiliary aids and services where necessary to afford an individual with a disability an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity conducted by a public entity.
(2) In determining what type of auxiliary aid and service is necessary, a public entity shall give primary consideration to the request of the individual with disabilities. [2]

It is clear that the City has failed to ensure that communications with Plaintiff are as effective as communications with other participants of its residential mental health services; that it has failed to furnish appropriate auxiliary aids and services (interpreters or deaf--accessible services) which are necessary in order for him to participate in and enjoy the benefits of his residential mental health services; and has thereby denied him an equal and effective opportunity to benefit from its residential mental health service system.

It is settled law that the failure of public entities to provide adequate accommodations to meet the communication needs of deaf individuals violates the ADA. In *Doe v. Sylvester*, 2001 WL 1064810 (D. Del. 2001), for example, the court denied the state defendant's motion to dismiss claims based on the inadequate provision of sign language interpreter services (they were being provided for only four to nine hours per day) in a psychiatric hospital and failure to offer auxiliary aids and services, including interpreters or sign-fluent staff in a community placement

---

[2] Plaintiff has requested that the auxiliary services he receives be in the form of a placement at an existing and available facility where staff and residents use sign language so that he can communicate directly rather than through an interpreter. This is also the most cost effective method of providing him communication that is as effective as that provided to others receiving residential mental health services.

to which plaintiff had been referred. *See also Clarkson v. Coughlin*, 898 F. Supp. 1019, 1952 (S.D. N.Y. 1995) in which the court granted permanent injunctive relief for a class of deaf prison inmates with respect to their claims that the state failed "to make reasonable accommodations to facilitate full participation by class members in educational, vocational and rehabilitative contexts" and for "medical and mental health treatment."

Plaintiff's claims are much stronger than those which warranted preliminary injunctive relief in *Tugg v. Towey*, 864 F. Supp. 1201 (S.D. Fla. 1994). There, the court held that plaintiffs had a reasonable probability of success on the merits of their claim that the state was violating the ADA by providing outpatient mental health services to patients who were deaf through the use of interpreters, rather than through the use of mental health professionals who were fluent in sign language and understood deaf culture. The court concluded, on the basis of expert testimony, that mental health services provided to deaf patients through sign language interpreters were not equal to services provided to hearing patients. In the instant case, Plaintiff's residential mental health services are not only provided by staff who know nothing of sign language or deaf culture, but are being provided without even the aid of an interpreter. Plaintiff has more than a reasonable probability of success on the merits of his claim.

### B.  The Rehabilitation Act.

Plaintiff has also asserted claims against the City under Section 504 of the Rehabilitation Act. The courts frequently combine the analyses of the ADA and Section 504 because they generally prohibit the same type of discrimination and because Congress has directed that Title II of the ADA be interpreted in a manner consistent with Section 504. *See, e.g., Bartlett v. New York State Board of Law Examiners*, 226 F.3d 69, 78 n. 2 (2d Cir. 2000); *Frederick L. v. Department of Public Welfare*, 364 F.3d 487 (3d Cir. 2004) ("We have construed the provisions

of the RA [Section 504] and the ADA in light of their close similarity of language and purpose.") Just as with the ADA, courts have validated claims against public entities under Section 504 for failing to provide effective communication for deaf plaintiffs.  *See, e.g., Clarkson v. Coughlin*, *supra*., and  *Bonner v. Lewis*, 857 F.2d 559 (9th Cir. 1988) (summary judgment for state overturned on Section 504 claim of denial of adequate accommodations to deaf prison inmate). The only significant difference between the two statutes is that Section 504 only applies to programs or activities receiving federal financial assistance.  Plaintiff will demonstrate at the hearing that the City and its mental health program are recipients of federal financial assistance.

## IV.   WITHOUT AN INJUNCTION, CRAIG H. WILL CONTINUE TO SUFFER IRREPARABLE HARM

To prove irreparable harm, a plaintiff must show that he is at risk of "'potential harm which cannot be redressed by a legal or an equitable remedy following trial'" and that the harm is "'of a peculiar nature, so that compensation in money cannot atone for it. . . .'"  *Acierno v. New Castle County*, 40 F.3d 645, 653 (3d Cir. 1994) (citations omitted).  Plaintiff will show that he is being denied adequate mental health care as a result of the lack of communication with his staff, is at risk of repeated psychiatric crises necessitating hospitalization, is at risk of physical harm due to the inability to communicate a potential adverse reaction to psychotropic medication, and is suffering from a continual sense of emotional isolation and frustration which adds to his already significant psychiatric disorder.  In addition, there is a significant risk that the available openings at the deaf mental health facility in Montgomery County, which is the only residential mental health program in the area that is designed to meet the needs of deaf individuals, will be filled before this case is heard.

It is well established that individuals who are denied appropriate and timely mental health treatment suffer irreparable harm. *See Tugg v. Towey*, *supra*, 864 F. Supp. at 1209 (mental health

patients would suffer irreparable injury if they received inadequate mental health services); *Casey v. Lewis*, 834, F. Supp. 1477, 1551-52 (D. Ariz. 1993) (irreparable injury found from lack of adequate mental health care in prison); *See also* cases holding that the denial of medical benefits constitutes irreparable injury. *Caldwell v. Blum*, 621 F.2d 491, 498 (2d Cir. 1980), *cert. denied*, 452 U.S. 909 (1981); *Estate of Aitkin v. Shalala*, 986 F. Supp. 57, 65 (D. Mass. 1997) (holding that termination of Medicare benefit is irreparable injury). *See also Chu Drua Cha v. Noot*, 696 F.2d 594, 599 (8th Cir. 1982) (indicating that denial of AFDC benefits, and possible resulting loss of medical care, constitutes irreparable harm).

Plaintiff cannot wait for the ultimate resolution of this case because, as the court opined in *Sobky v. Smoley*, 855 F. Supp. 1123,1142 (E.D. Cal. 1994) "[f]or anyone in immediate need of medical treatment, the value of medical services provided in the future is less than the value of medical services provided when needed, particularly when the need is great." The deprivation of appropriate mental health treatment cannot be fully compensated for in money. In that sense it is like education: "Compensation in money can never atone for deprivation of a meaningful education in an appropriate manner at an appropriate time." *John T. v. Commonwealth of Pennsylvania*, 2000 WL 558582, at * 8 (E.D. Pa. May 8, 2000) (granting preliminary injunction in case brought under the IDEA).

Similarly, monetary compensation cannot fully atone for ongoing and severe emotional distress. *Oshiver v. Court of Common Pleas, Court of Common Pleas*, 469 F. Supp. 645, 653 (E.D. Pa., 1979) ([Plaintiff] has presented credible evidence of nervous and emotional problems brought on by her dismissal. ….The injury concurrently being suffered by plaintiff cannot be cured by retrospective relief; and plaintiff requires a preliminary injunction to halt this continuing injury.) *Ray v. School District of DeSoto County*, 666 F. Supp. 1524, 1534-35 (M.D.

Fla. 1987) (irreparable injury based upon HIV positive childrens' feelings of anger, resentment and social rejection when placed on homebound instruction or in segregated classrooms). In fact, courts have found irreparable injury in cases brought under Section 504 for emotional harm that is much less severe in nature than that effecting Plaintiff. *See Chalk v. United States District Court Central District of California*, 840 F.2d 701, 710 (9th Cir. 1988) (irreparable injury found from deprivation of a sense of well-being); *Crocker v. Secondary School Athletic Ass'n*, 735 F. Supp.753 (M.D. Tenn. 1990), *aff'd* 908 F.2d 972 (6th Cir. 1990) (disabled plaintiff's exclusion from interscholastic athletics caused irreparable injury by denying plaintiff the satisfaction of competitive sports).

Only a preliminary injunction will prevent Craig H. from being irreparably harmed until a decision on the merits of his claims is reached.

V.   **THE BALANCE OF HARMS WEIGHS IN FAVOR OF PLAINTIFF**

Further, the only possible harm to the City that would come from an injunction is financial, and financial harm to the City, if any, cannot outweigh the significant harm that Plaintiff will face in the absence of effective communication within his residential program.$^{3}$ As one court wrote: "The harm to the Commonwealth if [a preliminary injunction were] granted, while it may not have been negligible, was measured only in money and was inconsequential by comparison" to the harm suffered by the plaintiffs. *Todd v. Sorrell*, 841 F.2d 87, 88 (4th Cir. 1988). When the only hardship is that the City would provide appropriate accommodations to Plaintiff, who unequivocally will suffer irreparable harm as a result of the City's denial of such services, the balance of hardship "would tip decidedly toward [P]laintiff[] if relief were denied." *Caldwell v. Blum*, 621 F.2d at 498-99; *see also Westenfelder v. Ferguson*, 998 F. Supp. 146, 158

---

$^{3}$   As noted above, the evidence will show that a transfer of plaintiff to the Montgomery County deaf residential facility will be significantly less costly than the provision of interpreter services at his current placement.

(D. R.I. 1998) (holding that financial harm to the state caused by issuance of an injunction to require payment of welfare benefits does not rise to the level of hardship faced by plaintiffs).

Further, in this case a delay could actually cause harm to defendant. If the court rules in Plaintiff's favor only after the available openings at the deaf mental health facility in Montgomery County are filled, the City will be required to either develop a new program or provide expensive, comprehensive interpreter services at much greater expense than would be necessary today.

In light of the great harm to Plaintiff if preliminary relief is not granted and the absence of comparable harm to the City, the balance clearly tips in favor of granting preliminary relief.

## VI. INJUNCTIVE RELIEF FOR CRAIG H. WOULD FURTHER THE PUBLIC INTEREST

The requested relief is in the public interest. The public will benefit if Craig H. receives appropriate mental health services, no matter what the ultimate outcome of this litigation. As the Court held in *Tugg v. Towey*, "the public has an interest in providing for the full participation by persons with disabilities in the mental health benefits afforded by the state." 864 F. Supp. at 1211. Further, the public has an interest in prohibiting and remedying discrimination on the basis of disabilities. As the court stated in *Judy B. v. Borough of Tioga*, 889 F. Supp. 792, 802 (M.D. Pa. 1995):

> Issuance of the injunction is consistent with the public interest in bettering the lives of the handicapped and allowing them to live lives on a footing equal to the non-handicapped, policies endorsed by Congress with passage of . . . Section 504 of the Rehabilitation Act, and comparable legislation intended to remove impediments to the handicapped enjoying the same rights and privileges as all other citizens.

*See also John T.,* 2000 WL 558582 at *8 ("It is in the public interest to provide benefits to those entitled to them under the law."); *Westenfelder v. Ferguson*, 998 F. Supp. at 159 ("[A]n injunction will promote the public interest here because the public as a whole has a predominant

interest in seeing that the functions of government are conducted <u>lawfully</u> for the benefit of all citizens.") (emphasis in original); and *Estate of Aitkin v. Shalala*, 986 F. Supp. at 65 ("[T]he public interest is greatly served by assuring that the agency will perform its statutory duties carefully and fairly.").

### VII.   CONCLUSION

For the reasons set forth above, the City should be required to either place Plaintiff at the deaf mental health facility in Montgomery County or otherwise provide effective communication for all aspects of his residential treatment program.  The Plaintiff respectfully requests that the Court enter an order in the form attached to this motion.

Respectfully submitted,



_____
Edmond A. Tiryak, Esquire
Attorney at Law
Attorney ID No. PA 20501

Post Office Box 229
Wayne, PA 19087-0229
(610) 341-9797 (voice)
(610) 341-9356 (fax)
etiryak@email.msn.com

Rachel Mann, Esquire
Attorney I.D. No. 49267
Disabilities Law Project
1315 Walnut Street, 4th Floor
Philadelphia, PA 19107
(215) 238-8070, Ext. 205

Attorneys for Plaintiffs and the Class

Date: June 11, 2004

**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CRAIG H., by his next friend, CRISTINA CORP-FRANCIS, | : | |
| | : | |
| Plaintiff, | : | C.A. No. 04-cv-1985 |
| | : | |
| v. | : | |
| | : | |
| CITY OF PHILADELPHIA | : | |
| | : | |
| Defendant. | : | |

**CERTIFICATE OF SERVICE.**

  EDMOND A. TIRYAK, counsel for plaintiff, The undersigned hereby certifies that the attached documents have been filed electronically with the Court, and are available for viewing and downloading from the ECF system by the below counsel, who has consented to electronic service:

    Daniel L. Garry
    Deputy City Solicitor
    1515 Arch Street
    15th Floor
    Philadelphia, PA 19102-1595

            Respectfully Submitted,



            _____
            EDMOND A. TIRYAK

Dated: June 10, 2004